Judge Green.
Nelson, professing to act as attorney in fact for D. Diggs, administrator of A. Smith, sold at public sale a house and lot at York Town. The advertisement exhibited by the crier at the sale, stated that, the property belonged to the heirs of Doctor Augustine Smith, and would be sold uj> on a credit of one, two, and three years; the purchaser giving bond with approved security, and a deed of trust on the property; and that possession would be given on the first day of January then next. Nothing was said as to the time when a conveyance was to be made. The sale was on the 15th of December, 1817. The appellant became the purchaser, and executed his bonds according to the terms of the advertisement. He entered into the possession of the property, and held it until 1821. In the mean time, early in 1819, one of the houses on the lot, *479 and the most valuable, was consumed by fire. No demand WiS made by the purchaser for a conveyance, until after this event; and when it was made, it was made upon Nel. son, who says that he refused to make a conveyance, having no authority to do so; but informed the appellant that Diggs, the administrator, and his wife, late the widow of Augustine Smith, and such of the children as were of age, would convey a&.soon as the first payment was made.* Thereupon, the appellant, in June, 1819, filed his bill seeking to vacate the contract, and to have the bonds surrendered, upon the ground that the vendor, at the time of the sale, had no title; and that in consequence of the infancy of some of the heirs of A. Smith, at the time of the sale, no complete title could be made; and that-the impediment still existed as to some of the heirs. The family of A. Smith, (who died intestate,) entitled to this property, were his widow, who intermarried with Diggs, who administered on his estate, and five children, one only of whom was of age when the sale was made. All were made defendants in this cause, by an amended bill. The son of A Smith, who was of age at the time of the sale, answered that the sale was made with his privity and consent; and that he was willing to convey his interest to the purchaser. All the other children answering after they came of age, agree t« confirm the sale, and to convey to the purchaser. Two of these did not. attain their age until after July, 1821. No written contract was entered into, shewiug the terms of the agreement. Nelson filed the power of attorney from Diggs, authorising him to sell the property.
It might be inferred from the advertisement, stating th.at; a deed of trust was to be given by the purchaser, that a good title was to he immediately made to him. The complainant alleges that such were the terms of the sale; and that' it was publicly proclaimed, and understood by him and the by-standers generally, that a title would be made to the purchaser, upon the terms of the sale being compli *480 ed with; and that, accordingly, upon the execution of the bonds, he demanded a conveyance from Nelson; when, to his astonishment, Nelson told him he was not authorised mabe a deed. Two witnesses, Gibbs the crier, and Wynne, state, “that it was understood at the sale, and stated in the advertisement, that when the terms of the sale were complied with, a title would be made.” On the other hand, Nelson denies that there was any such stipulation. The advertisement is produced, with a memorandum of the sale, endorsed at the time of the sale, by Gibbs the crier, and proved by him. It is proved, that the advertisement was read by the crier, before the biddings ; and there is no stipulation in the advertisement as to the time when the title should be conveyed. Nelson denies that any application was made by the complainant for a title, until after the burning of the house in 1819. It is proved, that ther purchaser had said that he knew that the title was in part in infants, and could.not be conveyed until they came of age; and he entered into the possession, and retained possession of the property for nearly four years, never claiming a conveyance until after the house was burned.
Upon these facts, it is impossible to resist the conclusion, that the purchaser knew perfectly the state of the title, when he purchased, and that tío title could be made until the infants came of age; and that he neither demanded nor expected a title to be made until then.
The Chancellor thought that the contract ought to be executed, and decreed accordingly.
How far time is material in a Court of Equity, upon the question of enforcing the execution of a contract, depends upon the particular circumstances of each case, and the conduct.of the parties. The authorities upon this subject are collected in Sugden’s Law of Vendors and Purchasers; and in the judgment of Chief Justice Marshall in Garnett v. Macon.
*481 In general, the contract will not be enforced by a Court of Equity, if the party asking the execution of the contract has been in default, and the other party will thereby suffer a serious loss, if compelled to carry the contract into effect. But, if the purchaser knew, when he made his contract, that there was a defect in the title, and that it would take a considerable time to remove it, or acquires this knowledge after his purchase, and acquiesces in.the delay, or proceeds, with knowledge of the defect, in the execution of the contract; he cannot complain. Pincke v. Curtis, 4 Bro. Ch. Cas. 329.
In this case, the purchaser knew that no conveyance could be immediately made; and that there was no possible means of removing the, impediment, but the efflux of time; yet, with this knowledge, he made the purchase, and proceeded to carry it into effect as far as under existing circumstances it could be done. And, indeed, there was no time stipulated for making the conveyance. The fair inference from the whole circumstances of the case, is, that the agreement was that the conveyance by the children should'be procured, when they came of age; and if so, then the contract can now be executed literally, according to the intention of the parties.
The principle of the decree of the Court of Chancery is therefore right. But it is erroneous in this, that it dissolves the injunction unconditionally, and directs the defendants to convey to the plaintiff; whereas, the order for dissolving the injunction should have been upon the condition, that the defendants executed a deed to the plaintiff, with general warranty, and filed it, duly authenticated for record, with the clerk of the Court, for the use of the plaintiff. The reservation in the decree is proper.*
*482 The decree should therefore be reversed, and a decree entered according to the foregoing principles; the appellees to recover their costs, being the parties substantially pre^ vailing.
The other Judges concurred.*

 This reservation was, that the defendants should have liberty to apply to the Court for an order directing the sale of the premises, for the payment of the purchase money, if they should he advised so to do.